Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4955 | **DATE** | 9/7/2000 |
| **CASE TITLE** | Irene Mullart vs. Joe Doe | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Motion for summary judgment [6-1] is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices: 3 | Document Number |
| | Notices mailed by judge's staff. | SEP 12 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | UM | 21 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | SEP 12 2000 date mailed notice |
| TSA | courtroom deputy's initials | 00 SEP 11 PM 4:14 | UM mailing deputy initials |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENE MULLART, Guardian of the Estate of Michael Mullart, an alleged disabled person<br><br>Plaintiff,<br><br>v.<br><br>JOE DOE,<br><br>Defendant. | No. 99 C 4955<br><br>Judge Wayne R. Andersen<br><br>DOCKETED<br>SEP 12 2000 |

## **MEMORANDUM, OPINION AND ORDER**

Plaintiff, Irene Mullart, the mother and guardian of decedent, Michael Mullart, has sued the Village of Hinsdale and certain police officers (identified as John Does). Count One of the complaint alleges that Village police officers violated Mr. Mullart's civil rights. Count Two alleges that the Village is liable for the officers' civil rights violations under the doctrine of *respondeat superior*. The officers have raised the defense of qualified immunity and have moved for summary judgment on both Counts. For the following reasons, we deny defendants' motion.

## **BACKGROUND**

Michael Mullart, was shot by members of the Hinsdale Police Department on July 9, 1999 and was paralyzed as a result of his injuries. He died of complications from those injuries on September 27, 1999. Plaintiff Irene Mullart, Mr. Mullart's mother, brought this suit as guardian of her son's estate. On the night in question, three Hinsdale police officers responded to a potential suicide call at the home of Michael Mullart. Following the officers' arrival, Officer



John Doe testified in his deposition that Mr. Mullart, holding what appeared to John Doe to be a long gun, emerged from his house and stood on his porch. He looked at John Doe, who was positioned in the street behind his department Chevrolet Tahoe, said nothing, and went back into the house.

Officer James Doe asserted that he arrived on the scene from the south and took cover behind a rock in the front yard of the house next door to the Mullarts'. He noticed that Mr. Mullart was back outside his house, crouched under an evergreen tree and holding a weapon. Mr. Mullart pointed his weapon at John Doe, who claims that he did not see Mr. Mullart at this time. James Doe fired three shots at Mr. Mullart and observed him fall back and moan after the third shot, leading James Doe to believe that he had hit Mr. Mullart. James Doe radioed that shots had been fired and called for an ambulance. Neither officer announced their office during their encounter with Mr. Mullart.

John Doe claims that he did not know at that time whether James Doe or Mr. Mullart fired the shots and that his attempts to clarify that fact over the radio were unsuccessful. John Doe spotted James Doe running away from the house, caught up to him, and clarified that James Doe had fired his weapon. John Doe then returned to his position behind the Tahoe, where James Doe joined him.

Mr. Mullart rose back to a crouched position and pointed his weapon at both officers. Both officers pointed their guns at Mr. Mullart and John Doe ordered him to drop his weapon. Mr. Mullart did not do so and John Doe fired his gun twice. Mr. Mullart again fell to the ground, leading the officers to believe that he had been hit again.

2

Mr. Mullart tried to get back up again and told the officers to shoot him. The officers kept their guns pointed at Mr. Mullart and commanded him repeatedly to drop the weapon. John Doe told James Doe not to shoot Mr. Mullart. Mr. Mullart then shouldered his weapon and once again pointed it at the officers, who were still behind the cover of the Tahoe. John Doe then fired three additional shots and Mr. Mullart fell onto his back.

The officers approached Mr. Mullart, handcuffed him, and then discovered that his weapon was a loaded crossbow. They searched Mr. Mullart's house, but did not find any firearms.

The evidence submitted to the court shows that Mr. Mullart suffered from acute alcoholism and was partially disabled from a physical injury. Plaintiff claims that the officers were aware of Mr. Mullart's disabilities prior to the incident. John Doe admitted in his deposition that he was aware of one or two prior suicide calls involving Mr. Mullart and that he knew that Mr. Mullart to be a "big drinker." John Doe also stated that he knew that Mr. Mullart kept weapons in the house and that Mr. Mullart possessed a firearm card. John Doe testified that Mr. Mullart made a telephone death threat against another Hinsdale officer and that there had been other police complaints concerning Mr. Mullart. James Doe testified that he had seen Mr. Mullart intoxicated before and that he had heard stories concerning prior arrests of Mr. Mullart for possession of weapons, threats to other officers and being combative with the police.

## DISCUSSION

The Seventh Circuit has held that government officials claiming qualified immunity from a civil rights claim are not entitled to summary judgment if there are issues of disputed fact upon which the question of immunity turns or if it is clear that the officials' conduct violated clearly

3

established norms. Apostol v. Landau, 957 F.2d 339, 342 (7th Cir. 1992). In Plakas v. Drinski, the Seventh Circuit stated:

> The award of summary judgment to the defense in deadly force cases must be made only with particular care where the officer is the only witness left alive to testify. A court must undertake a fairly critical assessment of the forensic evidence, the officers' original reports or statements, and the opinion of experts to decide whether the officers' testimony could reasonably be rejected at trial."

19 F.3d 1143, 1147 (7th Cir.), cert. denied, 513 U.S. 820 (1994).

Ultimately, there are facts in dispute here that are relevant to whether the officers' use of deadly force was objectively reasonable under the circumstances, thus precluding summary judgment. First, and most importantly, we cannot as a matter of law say that James Doe acted reasonably in shooting at Mr. Mullart before announcing his presence as a police officer to Mr. Mullart. According to James Doe, he first observed Mr. Mullart crouching behind a tree, holding a weapon, but not pointing it at anyone. Defendants has not submitted any evidence refuting plaintiff's expert's assertion that an officer must announce his presence prior to using deadly force.

Second, we cannot say as a matter of law that the officers' belief that Mr. Mullart possessed a shotgun was objectively reasonable. A crossbow and a gun are markedly different in appearance even given the 30 to 75 feet distance between the police and Mr. Mullart. John Doe testified that he illuminated the front of the house with his vehicle-mounted spotlight. This light remained in that position for the entire encounter. An overhead light on the porch also illuminated the front of the house. James Doe testified in his deposition that he observed Mr. Mullart crouching beside a pine tree in front of the house. At this time, Mr. Mullart was out of

4

the beam of John Doe's spotlight and illuminated only by the porch light. However, James Doe said that Mr. Mullart was holding a "long weapon" that had a "pistol grip" and a stock. If James Doe could see the weapon well enough to notice the pistol grip features, and the loading motion, it is possible that he should have observed that the weapon was a crossbow. And, although a crossbow may still be employed as a deadly weapon, it is not hard to imagine that police approaching the scene differently had they known the weapon was not a firearm.

Third, Mr. Mullart's history of suicide threats, alleged mental disabilities and behavioral history, and the officers' knowledge of these facts, present fact questions concerning the reasonableness of their actions at the scene. The police have denied knowing the full extent of Mr. Mullart's disabilities. However, both their testimony and the record as a whole, including the fact that Mullart previously had been in Hinsdale police custody, suggests otherwise. If the police knew (or should have known) that Mr. Mullart was suicidal or alcoholic, their use of deadly force in this situation may not have been objectively reasonable.

## CONCLUSION

Because we are unable to conclude as a matter of law that the officers here acted reasonably, we deny the motion for summary judgment.

Wayne R. Andersen
United States District Judge

Dated: September 7, 2000

5